******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

MATHEW BURR ET AL. *v.* GROSSMAN
CHEVROLET-NISSAN, INC.
(AC 45867)

Cradle, Seeley and Norcott, Js.

*Syllabus*

The plaintiffs, B, E, and M Co., sought to recover damages from the defendant car dealership for alleged breach of contract, fraud, theft, and violation of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.) in connection with the purchase and sale of a plow truck. B, the managing member of M Co., testified that, on January 21, 2015, he signed an instalment contract on behalf of M Co. for the purchase of the plow truck. E, who was not a member of M Co., cosigned the contract, and B drove the truck off the lot. The plaintiffs did not submit this purported contract as an exhibit in the trial court. A few days later, B returned to the showroom at the request of D, one of the defendant's salesmen, to return the purchase documents so that corrections could be made. B was assured that the terms of the documents would not change. B and E claimed that they never signed any other documents in connection with the sale of the plow truck. Both parties, however, submitted into evidence an instalment contract dated January 26, 2015, which identified the plow truck as the purchased vehicle and listed an increased sales price, a higher loan interest rate, and a longer loan period than that which the plaintiffs alleged had been quoted by D and incorporated into the original contract. The plaintiffs claimed that the defendant forged their signatures on the January 26, 2015 contract documents. They also alleged that the window sticker on the plow truck, known as a Monroney sticker, did not reflect the vehicle's true price. D died sometime after the purchase of the plow truck and was never deposed in this action. G, the owner of the defendant, was called to testify at the trial by the plaintiffs. She stated that, although she did not have firsthand knowledge of the events surrounding the transaction, she had discussed it with D and there was no indication that there had been a deal or contract that reflected the terms the plaintiffs claimed were set forth in the January 21, 2015 contract. She stated that two contracts were signed in connection with the sale of the plow truck, the first on January 21, 2015, and the second on January 26, 2015; however, she claimed that both contracts reflected the same cash price of the truck and the same amount financed. She stated that the January 26, 2015 contract was signed because the defendant was able to secure more favorable approval terms with a second lender, A Co., and that D had asked the plaintiffs to return to the defendant to rescind the January 21, 2015 contract so they could take advantage of those terms. The trial court rendered judgment in favor of the defendant, finding that the plaintiffs failed to sustain their

burden of proof regarding their claims of breach of contract, fraud, and theft and that they failed to establish that the defendant engaged in unfair or deceptive acts or practices, and the plaintiffs appealed to this court. *Held*:

1. The plaintiffs' claim that the trial court misinterpreted their legal claims was unavailing: to the extent the plaintiffs claimed that the trial court failed to make certain factual findings or that it overlooked claims made by the plaintiffs, this court did not agree with such claims, and the plaintiffs failed to file a motion to reargue, a motion for clarification, or a motion for articulation seeking to have the trial court address the alleged deficiencies; moreover, in its memorandum of decision, the trial court explicitly addressed each of the counts of the plaintiffs' complaint, and each of the claims B asserted at trial when the court asked him to summarize their claims, before holding that the plaintiffs had not met their burden of proof as to each count.

2. The plaintiffs' arguments challenging the trial court's credibility determinations were not convincing: contrary to the plaintiffs' contention, there was no indication that the trial court did not base its credibility determinations on the conduct, demeanor and attitude of the witnesses; moreover, after finding G's testimony credible, the trial court stated that her testimony was supported by documentary evidence and properly explained its determination by citing to various portions of her testimony and the other evidence admitted at trial, and it was not the role of this court to second-guess the trial court's credibility determinations.

3. The plaintiffs' claim that the trial court made findings contrary to the evidence that undermined appellate confidence in the trial court's fact-finding process and required a new trial failed:

a. This court was not left with a definite and firm conviction that the trial court had erred in finding that there was no evidence to support the plaintiffs' claims and that the plaintiffs had signed the documents related to the sale of the plow truck: the trial court's finding that it "defie[d] common sense" that the defendant would allow the plaintiffs to drive the truck off the defendant's property without a deal in place was not clearly erroneous because the court explicitly credited G's testimony, which supported a finding that the defendant did not engage in a yo-yo scam and that the plaintiffs executed a contract for the purchase of a plow truck before leaving the defendant's premises on January 21, 2015; moreover, in asserting that the trial court erred in finding that the evidence did not support their claims because they had been forced to return to the defendant the only copy of the alleged original contract, the plaintiffs misapprehended the burdens of proof related to their complaint, implying that the defendant had the burden of proving that the plaintiffs had signed the documents in evidence when, in fact, the burden was on the plaintiffs to prove that the signatures were not genuine; furthermore, the plaintiffs did not submit any credible evidence that their signatures on the documents in evidence had been forged, that any

of the documents in evidence had been improperly fabricated or changed, that there was ever a January 21, 2015 contract with A Co., or that any of the defendant's behavior amounted to a CUTPA violation, and they offered only the testimony of B and E in support of their complaint, which the trial court found not to be credible.

b. This court declined to review the plaintiffs' remaining challenges to the trial court's findings: in making their claims that it was clearly erroneous for the trial court to find that it was not logical or reasonable that E would make payments to A Co. with respect to a January 26, 2015 contract that he had never signed and that the trial court could not reconcile the claim that someone else put E's name, as a member of M Co., on the January 26, 2015 documents with the fact that M Co. bought the plow truck, the plaintiffs were questioning the trial court's interpretation of their claims at trial, which they should have addressed by filing a motion to reargue, a motion for clarification, or a motion articulation; moreover, the trial court's finding that the plaintiffs ratified the January 26, 2015 contract was unnecessary to its holding because the court had already found that M Co. agreed to the contract, and, as such, the plaintiffs could not have been aggrieved by any alleged error as to the court's finding; furthermore, the plaintiffs failed to preserve for appellate review their claim that the trial court erred in finding that the defendant's failure to supplement the Monroney sticker on the plow truck to reflect that the truck had been equipped with a plow was insignificant because, in the trial court, they did not cite to any law or make any argument to explain the significance of affixing an addendum to the Monroney sticker.

Argued January 16—officially released April 16, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Middlesex, and tried to the court, *Hon. Edward S. Domnarski*, judge trial referee; judgment for the defendant, from which the plaintiffs appealed to this court. *Affirmed.*

*Jack G. Steigelfest*, for the appellants (plaintiffs).

*Michael R. McPherson*, with whom, on the brief, was *Laura Pascale Zaino*, for the appellee (defendant).

*Opinion*

CRADLE, J. The plaintiffs, Mathew Burr, Elmer Blackwell, and MPK Property Maintenance, LLC (MPK),

appeal from the judgment of the trial court, rendered in favor of the defendant, Grossman Chevrolet-Nissan, Inc.[1] On appeal, the plaintiffs claim that the court erred in (1) misinterpreting their legal claims, (2) relying on the testimony of the defendant's representative to reach its conclusion, and (3) finding certain facts in support of its judgment for the defendant. We affirm the judgment of the trial court.

The plaintiffs' four count complaint, dated September 6, 2018, alleged breach of contract, fraud, theft, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Following a three day bench trial, the court, *Hon. Edward S. Domnarski*, judge trial referee, set forth the following relevant procedural and factual history in a memorandum of decision dated September 12, 2022. "The plaintiffs' claims arise out of MPK's purchase, in January, 2015, of a 2015 Chevrolet Silverado truck equipped with a snowplow (plow truck). The court heard evidence on April 26 and 27 and May 3, 2022. The parties filed post-trial briefs on August 15, 2022.

"The complaint contains 126 paragraphs; the first seventy-three paragraphs contain allegations related to the plaintiffs' purchase, from the defendant, of another vehicle, a 2014 Chevrolet Silverado dump truck (dump truck), in May of 2014. Although much of the testimony and many of the exhibits related to the purchase of the dump truck, the court finds that the plaintiffs' claims against the defendant relate to the purchase and sale of the plow truck.

"Burr, the managing member of MPK, testified to the following events. On or about January 21, 2015,

---

[1] References in this opinion to the defendant are to Grossman Chevrolet-Nissan, Inc. References in this opinion to Grossman are to the defendant's representative, Linda Grossman, who testified at trial on behalf of the defendant.

he discussed purchase of the plow truck with Lewis Davidson, a salesman at the defendant. The court notes Davidson has since passed away and was never deposed in this action. Davidson quoted Burr a price of $41,916 for the plow truck. The evidence established the plow had previously been installed on the truck by a company known as Dejana Truck & Utility Equipment Company, Inc. . . . Financing for the purchase of the plow truck was arranged by Davidson. Davidson told Burr that the financing would be at a rate of 4.3 percent spread out over seventy-two months. Burr signed an instalment contract on behalf of MPK on January 21, 2015, and drove the plow truck off the defendant's lot. A few days after purchasing the plow truck, Burr was asked to return to the defendant's showroom. Burr met with Davidson who told Burr that he needed to return the purchase documents to Davidson so that corrections could be made to the documents. Burr gave his purchase documents to Davidson, who assured Burr that the terms of the purchase documents would not be changed. In their posttrial brief, the plaintiffs refer to the [January 21, 2015] contract returned to Davidson as 'Contract #1.' The plaintiffs did not submit this purported contract as an exhibit. Burr testified he did not return to the defendant to sign any other documents. . . .

"Blackwell, who is described as a very close family friend, testified that he cosigned documents to help Burr purchase the dump truck and the plow truck.[2] Blackwell also testified that he went to the defendant's showroom on January 21, 2015, to cosign the documents so Burr could purchase the plow truck. Blackwell also testified that he never went back to the defendant after January 21, 2015. It should be noted that on a retail

---

[2] The plaintiffs allege in their complaint that Blackwell cosigned the documents in his individual capacity and that Blackwell was never a member of MPK.

instalment contract dated January 26, 2015 . . . Blackwell is listed as a co-buyer of the plow truck, along with MPK.

"Both the plaintiffs and the defendant have submitted a retail instalment contract dated January 26, 2015, which identifies the [plow truck]. . . . The contract contains the following relevant terms. The cash price for the vehicle, without tax, is $45,509. The amount financed is $43,745.16, with an annual percentage rate of 5.45 percent, payable by seventy-five monthly payments of $691.10. Burr and Blackwell both testified that they never signed the retail instalment contract . . . dated January 26, 2015.

"It is the plaintiffs' claim that the defendant created new purchase and financing documents for the plow truck that were never signed by the plaintiffs. The new financing documents stated an increased sales price for the plow truck, a higher loan interest rate, and a longer loan period than had been quoted by Davidson. The plaintiffs also claim that the defendant forged the plaintiffs' signatures on the documents. In addition, the plaintiffs claim the window sticker on the plow truck, known as a Monroney sticker,[3] did not reflect the true price of the plow truck.

"The plaintiffs did not provide a computation of their claimed damages at the trial. In their posttrial brief, the plaintiffs state that the improper actions of the defendant imposed a higher debt burden on the plaintiffs, which entitles them to compensatory damages for breach of contract in the amount of $9909.

"[Linda] Grossman is the owner and general manager of the defendant. Although she did not have firsthand

---

[3] A Monroney sticker is "the label placed on new automobiles with the manufacturer's suggested retail price and other consumer information, as specified at 15 U.S.C. [§§ 1231 through 1233] (also known as the 'Automobile Information Disclosure Act label')." 49 C.F.R. § 575.401 (c) (4) (2015).

knowledge of the events surrounding the plaintiffs' purchase of the plow truck, she was familiar with the circumstances of the transaction and the numerous documents involved that were admitted as exhibits.[4] . . . Grossman testified that there is no indication that there was a deal or contract for the defendant to sell the plow truck for a price of $41,916 with financing at 4.3 percent interest, payable over seventy-two months. . . .

"[Grossman] testified that two retail instalment contracts were prepared for [the] sale of the plow truck. The first contract was dated January 21, 2015, in which financing was provided by [JPMorgan Chase Bank, National Association (Chase)]. . . . That contract showed an amount financed of $43,745.16, an annual percentage rate of 7.59 percent, eighty-four payments of $674.95, with total payments of $56,695.80. The second contract, dated January 26, 2015, provided for financing by [Ally Financial, Inc. (Ally)]. . . . This second contract also showed an amount financed of $43,745.16 but had a lower annual percentage rate of 5.45 percent, seventy-five payments of $691.10, with total payments [of] $51,832.50—$4863.30 less. Both contracts show a cash price of the vehicle, excluding sales tax, of $45,509.

"[Grossman] also testified that after the first contract was signed, the defendant's business manager was able to secure more favorable approval terms with Ally. A representative of the defendant reached out to the plaintiffs to let them know of the favorable terms and asked them to come back to the defendant to rescind or 'unwind' the Chase contract to take advantage of the Ally contract terms. She understood that the Ally contract was signed on January 26, 2015." (Citations omitted; footnotes added.)

---

[4] Grossman testified that she spoke with Davidson about this case.

After considering the testimony of the parties and reviewing the exhibits, the court concluded that the plaintiffs "have not sustained their burden of proof regarding their claim of breach of contract set forth in count one. After careful consideration of the evidence presented and the elements of fraud, the court finds the plaintiffs have not sustained their burden of proof regarding the claim of fraud set forth in count two. The plaintiffs have not sustained their burden of proof regarding their claim of theft contained in count three. As to count four, which alleges violation of CUTPA, the plaintiffs have failed to establish that the defendant engaged in unfair or deceptive acts or practices." The court, therefore, rendered judgment in favor of the defendant. This appeal followed.

I

The plaintiffs first claim on appeal that the court misinterpreted their legal claims. Specifically, the plaintiffs contend that the court erred by deciding claims that they never made and by failing to decide the claims they did make. We disagree.

The following additional facts and procedural history are relevant to the resolution of this claim. In the first 125 paragraphs of their complaint, the plaintiffs made allegations as to the events surrounding their purchase of the dump truck and the plow truck and then incorporated those allegations by reference in their counts of breach of contract, fraud, theft, and violation of CUTPA. Paragraph 126 of each count in the complaint alleges that, as a result of the defendant's behavior, the plaintiffs suffered financial harm. At the conclusion of trial, after the plaintiffs had presented numerous exhibits and offered the testimony of Grossman, Blackwell, and Burr, the court asked Burr, who was on the stand, to summarize the plaintiffs' claims. Burr testified that the defendant had improperly (1) signed Blackwell's name

to MPK's articles of organization in order to get the plaintiffs a loan that should not have been approved, (2) failed to include the price of the plow on the plow truck's Monroney sticker, and (3) manipulated the plaintiffs' signatures to create a January 26, 2015 contract that the plaintiffs had never signed. The plaintiffs' posttrial brief largely reflected these claims and further alleged that, "on January 21, 2015, the plaintiffs agreed to purchase the plow truck for specific terms and conditions" and that the defendant "destroyed [the January 21, 2015 contract] and manufactured a new one . . . showing a later purchase date of January 26, 2015," with "a higher price . . . a higher interest rate . . . and a longer loan period . . . ." In their posttrial brief, the plaintiffs, for the first time, provided legal citations to specify which laws they accused the defendant of violating.

In its memorandum of decision, the court stated that it could not "reconcile [the claim that Blackwell had no authority to sign documents on behalf of MPK] with the fact that MPK bought a truck from the defendant, drove it off the lot, made all of the payments due to Ally under the financing arranged by the defendant, and still is in possession of the plow truck. If Blackwell was not authorized to buy the plow truck, there was no reason for MPK to keep and pay for the plow truck." As to the plaintiffs' claim regarding the Monroney sticker, the court found that "[i]t is not logical for the plaintiffs to think they were getting [the plow] for free. The plaintiffs and the defendant agreed on a price for the plow truck, which included a snowplow. The court cannot attach significance to the fact an addendum that showed the price of the plow may or may not have been a part of the [Monroney] sticker." Regarding the plaintiffs' claim that they did not sign the January 21 and 26, 2015 contracts in evidence, the court found that "[i]t defies common sense that the defendant would

allow Burr to drive the truck away without a signed deal being in place."

On appeal, the plaintiffs claim that the court "never decided the actual issues presented by the pleadings and evidence." The plaintiffs specifically contend that the court failed to make findings as to whether (1) "[the] documents [in question] were or were not signed by . . . Burr and . . . Blackwell," (2) the defendant "altered [MPK's articles of organization]," and (3) the Monroney sticker reflected the price of the truck with the plow. The plaintiffs also claim on appeal that the trial court, in some instances, "ignore[d] the plaintiffs' actual claim . . . and substitute[d] a wholly invented scenario . . . ." Specifically, the plaintiffs contend that certain of the court's findings respond to a claim that the plaintiffs did not make—i.e., that they never entered into a contract to buy the plow truck—instead of to their actual claim that the terms under which they purchased the plow truck had been illegally altered.[5] The defendant, in its appellate brief, suggests that the plaintiffs should have filed a motion to reargue and then a motion for articulation if the court had not addressed their causes of action. We agree with the defendant.

"It is well established that a party cannot obtain appellate review of a claim challenging a finding or

---

[5] To support this claim, the plaintiffs point to the court's findings that " '[i]t defies common sense that the defendant would allow Burr to drive the truck away without a signed deal being in place' " and that "MPK kept and paid for the plow truck it bought . . . ." They explain that "the plaintiffs never claimed that [the defendant] allowed . . . Burr to drive the truck off the lot without a signed deal in place. To the contrary, the plaintiffs explicitly alleged that MPK had entered into a contract to purchase the plow truck before driving the truck off the lot. . . . [T]heir disagreement was over the terms of that deal." (Citation omitted.) Further, they argue that the observation that MPK kept and paid for the truck "does not remotely refute the plaintiffs' arguments regarding the terms under which MPK bought the plow truck or the allegations that the defendant substituted forged documentation in place of the original terms."

determination that the court did not make. It is the responsibility of the appellant to provide an adequate record for review. . . . It is well established that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claims] would be entirely speculative. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . *or to ask the trial judge to rule on an overlooked matter.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *D2E Holdings, LLC* v. *Corp. for Urban Home Ownership of New Haven*, 212 Conn. App. 694, 712–13, 277 A.3d 261, cert. denied, 345 Conn. 904, 282 A.3d 981 (2022).

Here, to the extent the plaintiffs claim that the court failed to make certain factual findings or that it overlooked claims made by the plaintiffs, a determination we do not make, the plaintiffs failed to file a motion to reargue, a motion for clarification, or a motion for articulation seeking to have the trial court address those alleged deficiencies. "If the defendant believed that the trial court overlooked individualized proof required for any particular element of any particular cause of action that was of such consequence that it outweighed those

cited by the trial court, it was free to seek an articulation." *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, 330 Conn. 40, 66, 191 A.3d 147 (2018).

Moreover, we note that the court, in its memorandum of decision, explicitly addressed each of the counts of the plaintiffs' complaint, holding that the plaintiffs had not met their burden of proof as to each count. The court also addressed each of the claims Burr asserted when the court had asked him to summarize the plaintiffs' claims at trial. Accordingly, the plaintiffs' claim that the court misinterpreted their legal claims is unavailing.

II

The plaintiffs next claim that the court "erred in relying upon the testimony of . . . Grossman to defeat [their] claims and to impugn the testimony of . . . Burr and . . . Blackwell." They argue that there are limits to this court's deference to a trial court's credibility determinations and that the bases upon which the court found Grossman credible were improper.[6] We are not persuaded.

The following additional facts and procedural history are relevant to the resolution of this claim. In its memorandum of decision, the court stated that, "[a]s is often the case, the outcome of this trial is determined by the credibility of the witnesses that testified." The court further stated: "Having considered the testimony of the parties, and after reviewing the exhibits, the court finds . . . Grossman's testimony regarding the events surrounding the sale of the plow truck to be credible. Her version of events is supported by the exhibits related to the transaction. . . .

"The terms of the January 26, 2015 contract with Ally does have more favorable financing terms than the

---

[6] We note that Grossman's testimony was offered by the plaintiffs.

January 21, 2015 contract with Chase. [Grossman's] testimony that the [defendant] wanted to save an established customer money by way of reduced financing charges is credible. It is undisputed that Ally provided the financing for the plow truck. The plaintiffs made payments to Ally pursuant to the contract and, in fact, have paid Ally in full.

"The court takes no pleasure in stating that it finds Burr's testimony regarding the terms of the sale and financing is not credible. . . . [T]here is a lack of documentation to support Burr's testimony as to the sales price of the truck and the financing terms. The only document that supports the plaintiffs' version of events is [an] Ally offer to the defendant for financing [that states the pricing and financing terms the plaintiffs argue applied to the deal]. [Grossman] has credibly explained how this offer is between the [defendant] and Ally and was not an offer or agreement between Ally and the plaintiffs. . . .

"Blackwell repeatedly testified that he did not sign the documents related to the January 26, 2015 transaction. The court does not find Blackwell's testimony to be credible. The documents appear to bear his signature. When asked if he could identify his signature on the documents at his deposition, and at trial, Blackwell gave evasive and contradictory answers. The court was struck by the fact that Blackwell testified that, before he could identify his signature on a document, he needed to know the date of the document and the contents of the document." (Citations omitted.)

On appeal, the plaintiffs claim that the court improperly made its credibility determinations by comparing the testimony of the witnesses to the documentary evidence instead of on the basis of an assessment of the demeanor of the witnesses. "[A]s a reviewing court [w]e must defer to the trier of fact's assessment of the

credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude. . . . The weight to be given to the evidence and to the credibility of witnesses is solely within the determination of the trier of fact." (Internal quotation marks omitted.) *McLeod* v. *A Better Way Wholesale Autos, Inc.*, 177 Conn. App. 423, 450, 172 A.3d 802 (2017). "[I]t is the sole province of the trial court, as the trier of fact, to determine the credibility of the witnesses. . . . The court's determination that [a party's] witnesses were credible is beyond the scope of this court's review." (Citation omitted.) *Fishbein* v. *Menchetti*, 165 Conn. App. 131, 136, 138 A.3d 1061 (2016).

Here, contrary to the plaintiffs' contention, there is no indication that the court did not base its credibility determinations on the conduct, demeanor and attitude of the witnesses. After stating that it found Grossman's testimony credible, the court simply stated that it was supported by the documentary evidence. The court then properly explained that determination by citing to various portions of Grossman's testimony and the other evidence admitted at trial. Although the plaintiffs argue that the court should have rejected Grossman's testimony as not credible and, thus, come to a different conclusion on the basis of the evidence admitted, it is not the role of this court to second-guess a fact finder's credibility determinations, nor do we "review the evidence to determine whether a conclusion different from the one reached could have been reached." (Internal quotation marks omitted.) *Osborn* v. *Waterbury*, 197 Conn. App. 476, 482, 232 A.3d 134 (2020), cert. denied, 336 Conn. 903, 242 A.3d 1010 (2021). Accordingly, we are not convinced by the plaintiffs' arguments challenging the court's credibility determinations.

### III

We now turn to the plaintiffs' claim that the court "erred in making findings contrary to the evidence" and

that those findings, "[t]aken independently or together . . . undermine appellate confidence in the trial court's fact-finding process and require a new trial." We disagree.

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *AAA Advantage Carting & Demolition Service, LLC* v. *Capone*, 221 Conn. App. 256, 279–80, 301 A.3d 1111, cert. denied, 348 Conn. 924, 304 A.3d 442 (2023), and cert. denied, 348 Conn. 924, 304 A.3d 442 (2023). The plaintiffs challenge several of the court's findings on appeal. We address them in turn.

A

Only two of the plaintiffs' challenges to the court's findings are reviewable.[7] First, the plaintiffs contend that the trial court's finding that it " 'defies common sense' " that the defendant would allow the plaintiffs to drive the truck away without a deal in place was "wholly unsupported by the evidence" because "allowing a customer to drive off with the car is the first step in a yo-yo scam—there is nothing about it that defies common sense."[8] Taking this claim at face

---

[7] We address the plaintiffs' unreviewable claims in part III B of this opinion.

[8] The plaintiffs explain yo-yo scams in their posttrial and appellate briefs. "In a yo-yo scam, the consumer drives off with the car before financing is finalized, often with the dealer's assurances that everything will be fine and that there is just a little final paperwork to be received from the lender. A few days later, however, the dealer then contacts the consumer to say that the loan was not approved, so the consumer will have to return the car unless the consumer will agree to different and more onerous loan terms. Sometimes this is because the original loan was not in fact approved by

value, we conclude that the court's finding is not clearly erroneous. A yo-yo scam likely works *because* it defies common sense that a dealer would allow a purchaser to drive away before a deal has been struck. Moreover, this claim fails because the court explicitly credited Grossman's testimony, which supports a finding that the defendant did not engage in a yo-yo scam and that the plaintiffs executed a contract for the purchase of the plow truck before leaving the defendant's premises on January 21, 2015.

Second, the plaintiffs claim that the court erred in finding that the evidence did not support their claims because they had been forced to return to the defendant the only copy of the alleged original contract. Similarly, they claim that "there was no basis for the trial court to reach the . . . conclusion . . . that the [plaintiffs'] signatures were genuine," asserting that "[t]here was no evidence before the trial court that . . . Blackwell or . . . Burr signed the [January 26, 2015] agreement form or any documents related to it."

As a preliminary matter, the plaintiffs misapprehend the burdens of proof related to the counts of their complaint. They imply here that the defendant had the burden of proving that the plaintiffs had signed the documents in evidence. The cases they cite in support of the assertion that a signature on a document is not proof of the signature's authenticity, however, relate to the authentication of documents for admission as evidence. See *United States* v. *Vigneau*, 187 F.3d 82, 85 (1st Cir. 1999) (finding that certain documents were improperly admitted into evidence in criminal money laundering case, in part, because government had not offered direct or circumstantial evidence that defendant

the lender, but it can also simply be an opportunity for the dealer to increase its markup." (Footnote omitted.) A. Levitin, "The Fast and the Usurious: Putting the Brakes on Auto Lending Abuses," 108 Geo. L.J. 1257, 1304 (2020).

had completed those forms); *State* v. *Jones*, 8 Conn. App. 177, 183–84, 184 n.5, 512 A.2d 932 (1986) (stating, in response to defendant's claim that handwriting exemplars were not properly authenticated, that "the admission of the document, did not, in and of itself, establish the authenticity of the defendant's signatures on the documents"). The plaintiffs do not argue on appeal that the court improperly admitted the contracts as evidence. Where, as here, the plaintiffs accuse the defendant of fraud, the burden was on the *plaintiffs* to prove that the signatures were *not* genuine. See *Wieselman* v. *Hoeniger*, 103 Conn. App. 591, 595 n.7, 930 A.2d 768 ("[i]n common-law fraud cases, the plaintiff has the burden of proving fraud by clear and convincing evidence"), cert. denied, 284 Conn. 930, 934 A.2d 245 (2007). Similarly, the plaintiffs bore the burden of proving that there had been a January 21, 2015 contract with Ally. See *Downing* v. *Dragone*, 216 Conn. App. 306, 330–31, 285 A.3d 59 (2022) ("[i]t is well settled that the party seeking to establish the existence of an enforceable contract bears the burden of proving a meeting of the minds between the parties" (internal quotation marks omitted)), cert. denied, 346 Conn. 903, 287 A.3d 601 (2023).

Here, the plaintiffs submitted no credible evidence that (1) their signatures on the documents in evidence had been forged, (2) that any of the documents in evidence had been improperly fabricated or changed, (3) that there was ever a January 21, 2015 contract with Ally, or (4) that any of the defendant's behavior amounted to a CUTPA violation. In support of the four counts in their complaint, the plaintiffs offered only the testimony of Burr and Blackwell, which the court found not to be credible. Therefore, we are not left with a definite and firm conviction that the court erred in finding that there was no evidence to support the plaintiffs' claims and that they had signed the documents related to the sale of the plow truck.

B

We decline to address the plaintiffs' remaining three challenges to the findings of the court. First, the plaintiffs claim that it was clearly erroneous for the court to find that it was not logical or reasonable that Blackwell would make payments to Ally with respect to a January 26, 2015 contract he never signed and, similarly, that the court could not reconcile the claim that someone else put Blackwell's name, as a member of MPK, on the January 26, 2015 documents with the fact that MPK bought the plow truck. The plaintiffs explain that "[t]here is no dispute [that] the plaintiffs bought the plow truck, drove it off the lot and made payments on it . . . ." In making this claim on appeal, the plaintiffs question the court's interpretation of their claims at trial. In part I of this opinion, we disposed of the same claim. Thus, we will not review it further here.

Second, the plaintiffs claim that the court erred in finding that they ratified the January 26, 2015 contract. At trial, the plaintiffs asserted that Blackwell never had been a member of MPK despite the appearance of his name on a copy of MPK's articles of organization used in the loan application process and the word "member" written next to his signature on contracts in evidence. In its memorandum of decision, the court found that, "[w]hatever the merits of the plaintiffs' claim regarding Blackwell's authority to purchase the truck on behalf of MPK, the claim is rendered moot by MPK's implied ratification of the transaction by keeping and paying for the vehicle."

The defendant, in its appellate brief, asserts that the court's finding as to ratification was not necessary to its holding and was, therefore, dictum. We agree with the defendant. "A party is not aggrieved by a court's statements that are considered dicta." *Healey* v. *Mantell*, 216 Conn. App. 514, 525, 285 A.3d 823 (2022). "Dictum includes those discussions that are merely passing

commentary . . . those that go beyond the facts at issue . . . and those that are unnecessary to the holding in the case. . . . [I]t is not dictum [however] when a court . . . intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy . . . . Rather, such action constitutes an act of the court [that] it will thereafter recognize as a binding decision." (Internal quotation marks omitted.) *Cruz* v. *Montanez*, 294 Conn. 357, 376–77, 984 A.2d 705 (2009). Here, the court's finding that the plaintiffs ratified the January 26, 2015 contract was unnecessary to its holding because the court had already found that MPK agreed to the January 26, 2015 contract. Thus, the plaintiffs could not have been aggrieved by any alleged error as to the court's finding of ratification, and we decline to review their claim to that effect.

Last, the plaintiffs claim that the court erred in finding "that the [defendant's] failure to supplement the Monroney sticker is insignificant." They argue that they had "offered evidence that the Monroney sticker on the [plow truck] did not in fact show the suggested retail price of the vehicle because the [plow truck] had been equipped with a plow that added approximately $5000 to its cost." Although, in their appellate brief, the plaintiffs provide legal citations that allegedly support their contention that a failure to supplement the Monroney sticker constitutes a violation of CUTPA, the plaintiffs cited no such law and made no such argument before the trial court. "Our rules of practice provide that we are not bound to consider a claim unless it was distinctly raised at trial or arose subsequent to the trial. Practice Book § 60-5. . . . A claim is distinctly raised if it is so stated as to bring to the attention of the court the precise matter on which its decision is being asked." (Emphasis omitted; internal quotation marks omitted.) *A & R Enterprises, LLC* v. *Sentinel Ins. Co., Ltd.*, 202 Conn.

App. 224, 229, 244 A.3d 660, cert. denied, 336 Conn. 921, 246 A.3d 2 (2021). In light of the plaintiffs' failure in the trial court to cite any law or to make any argument that would have explained the significance of affixing an addendum to the Monroney sticker, this claim is not preserved for appellate review and we decline to review it. For the foregoing reasons, the plaintiffs' claims fail.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

––––––––––––––––––––––––––

[9] The defendant, in its appellate brief, asserts as an alternative ground for affirmance that the plaintiffs' fraud, theft, and CUTPA claims are barred by the applicable three year statutes of limitations. We need not address that alternative argument in light of our affirmance of the trial court's decision on other grounds.