******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ERIC LEVINE *v.* TRACY LEVINE
## (AC 48001)

Alvord, Westbrook and DiPentima, Js.

*Syllabus*

The plaintiff appealed following the trial court's denial of his motion to open the dissolution judgment to allow discovery of the defendant's allegedly fraudulent financial disclosure of the value of her share in her employer's medical practice. The plaintiff claimed that the trial court improperly determined that he failed to establish a preliminary showing of probable cause concerning fraud and made erroneous findings of fact. *Held*:

The trial court did not abuse its discretion in denying the plaintiff's motion to open, as the plaintiff had failed to establish probable cause that the defendant had committed fraud to warrant discovery and further proceedings.

The plaintiff failed to establish that the defendant knew as untrue at the time of her financial disclosure that her interest in her employer's medical practice was zero and that the defendant intended to cause his detrimental reliance on said disclosure.

The trial court's findings regarding whether the plaintiff read certain provisions in the defendant's employment agreement and the defendant's testimony as to whether the value of her share in her employer's medical practice could be quantified at the time of the financial disclosure were not clearly erroneous, and any error was harmless.

Argued January 5—officially released April 28, 2026

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Bozzuto, J.;* judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Carrasquilla, J.,* denied the plaintiff's motion to open the judgment, and the plaintiff appealed to this court. *Affirmed.*

*Kenneth J. Bartschi*, with whom were *Michael A. Lanza* and, on the brief, *Eric Levine*, self-represented, the appellant (plaintiff).

*James M. Ruel*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Eric Levine, appeals from the trial court's denial of his motion to open the judgment dissolving his marriage to the defendant, Tracy Levine. On appeal, he argues that the court (1) improperly concluded that he failed to make a preliminary showing of probable cause concerning the existence of fraud and (2) made erroneous factual findings. We affirm the judgment of the trial court.

The following facts, as summarized from the court's decision on the motion to open or otherwise supplemented by the record, and procedural history are relevant to our resolution of the plaintiff's appeal. The parties were married on August 14, 1993. In 2017, the plaintiff filed a complaint seeking to dissolve his marriage to the defendant on the grounds of irretrievable breakdown. The defendant filed a financial affidavit on May 1, 2018. Relevant to this appeal is the section entitled "Business Interest . . . ." Under that section she listed the name of her employer, Starling Physicians (Starling), as the "Name of Business," and she stated "0" on the line "Total Net Value of Business Interest . . . ." The parties entered into a settlement agreement, which the court, *Bozzuto, J.*, incorporated by reference into the May 1, 2018 judgment of dissolution.

On January 24, 2024, the plaintiff filed a motion to open, alleging that the defendant committed fraud by stating on her financial affidavit that the value of her share in Starling was zero. The plaintiff sought discovery regarding the value of the defendant's financial interest in Starling. Following a preliminary hearing, the court, *Carrasquilla, J.*, denied the motion to open in an August 7, 2024 memorandum of decision, concluding that the plaintiff had not established probable cause to warrant further discovery into his allegations of fraud.

This appeal followed. Additional facts will be set forth as necessary.

I

Before addressing the plaintiff's claims, we set forth our standard of review and relevant legal principles governing fraud claims in the context of a motion to open filed in a marital dissolution action. "A marital judgment based upon a stipulation may be opened if the stipulation, and thus the judgment, was obtained by fraud." *Billington* v. *Billington*, 220 Conn. 212, 217–18, 595 A.2d 1377 (1991). Although a motion to open a judgment normally must be filed within four months of entry of the judgment, a motion to open on the basis of fraud is not subject to this limitation. *Veneziano* v. *Veneziano*, 205 Conn. App. 718, 726, 259 A.3d 28 (2021); see also General Statutes § 52-212a.

"[A] party seeking to obtain discovery related to allegedly fraudulent conduct that transpired prior to the entry of judgment must . . . (1) move to open that judgment and (2) demonstrate to the trial court that the allegations of fraud are founded on probable cause. Absent such evidence, the court lacks authority to permit postjudgment discovery on such matters. . . . This is because, until the judgment has been opened, there is no active civil matter, discovery is permitted only when there is a cause of action pending, and there is no such thing as postjudgment discovery in a vacuum." (Citations omitted; internal quotation marks omitted.) *Karen* v. *Loftus*, 228 Conn. App. 163, 192, 324 A.3d 793, cert. denied, 350 Conn. 924, 325 A.3d 1094 (2024).

The preliminary hearing conducted on a motion to open on the basis of fraud "is not intended to be a full scale trial on the merits of the [moving party's] claim. . . . If the moving party demonstrates to the court that there is probable cause to believe that the judgment was obtained by fraud, the court may permit discovery." (Internal quotation marks omitted.) *Cimino* v. *Cimino*, 174 Conn. App. 1, 6, 164 A.3d 787, cert. denied, 327 Conn. 929, 171

A.3d 455 (2017). To obtain postjudgment discovery, the moving party must establish at a preliminary hearing the allegations of fraud "beyond a mere suspicion." *Brody* v. *Brody*, 153 Conn. App. 625, 636, 103 A.3d 981, cert. denied, 315 Conn. 910, 105 A.3d 901 (2014).

It is well established that, in general, we "do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed [as] long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Conroy* v. *Idlibi*, 343 Conn. 201, 204, 272 A.3d 1121 (2022).

Applying these general principles to the present case, we apply an abuse of discretion standard to the court's ultimate determination to deny the plaintiff's motion to open; id.; a clearly erroneous standard of review to the trial court's factual findings; *Hebrand* v. *Hebrand*, 216 Conn. App. 210, 216, 284 A.3d 702 (2022) (in reviewing court's denial of motion to open based on fraud, court's factual findings will not be disturbed unless they are clearly erroneous); and a plenary review standard to the plaintiff's claim that the court improperly concluded that he failed to establish probable cause to substantiate his fraud allegations. See *Karen* v. *Loftus*, supra, 228 Conn. App. 193 ("[T]he specific legal issue raised by the plaintiff warrants the application of a less deferential standard of review. Here, the plaintiff claims that the trial court improperly determined that she had failed to establish probable cause to substantiate her fraud allegations. . . . [W]hether particular facts constitute probable cause is a question of law. . . . Accordingly, we apply the plenary standard of review to the plaintiff's claim." (Citations omitted; internal quotation marks

omitted.**))**. With these principles in mind, we turn to the plaintiff's claims.

## II

The plaintiff claims that the court improperly concluded that he failed to make a preliminary showing of probable cause concerning the existence of fraud to warrant further discovery and additional proceedings. We are not persuaded.

"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: **(1)** a false representation was made as a statement of fact; **(2)** the statement was untrue and known to be so by its maker; **(3)** the statement was made with the intent of inducing reliance thereon; and **(4)** the other party relied on the statement to his detriment." (Internal quotation marks omitted.) Id., 203.

As to the first element of fraud, the court found that the defendant made a statement that "was not accurate" on her financial affidavit by listing the total net value of her interest in Starling as zero, contrary to her own testimony at the preliminary hearing that her share held a face value of $1000, representing her principal investment. As to the fourth element of fraud, the court found that the plaintiff relied on the defendant's financial affidavit in arriving at a dissolution agreement. The court, however, found that the plaintiff had not satisfied his burden to demonstrate the existence of probable cause as to the second and third elements of fraud. The plaintiff challenges these two findings and the court's resultant conclusions.

Specifically, the court reasoned that there was insufficient evidence to demonstrate the existence of probable cause that the defendant made a statement she knew was untrue at the time she signed her financial affidavit and that her financial affidavit was made with the intention of inducing detrimental reliance. The court noted that,

at the time of the dissolution, there was no discussion or potential of a possible sale of Starling and that the sale of Starling to Village Medical did not occur until five years after the judgment of dissolution. The court further found that, if all shareholders did not vote in favor of the Village Medical acquisition, the sale could not have occurred, meaning that other shareholders could have prevented the defendant from receiving the current value for her share. The court determined that, if Starling had not been purchased, the value of the defendant's share would remain at zero, or the principal investment of $1000 would be returned to her pursuant to her employment agreement upon her separation from employment.

Applying the "flexible, commonsense standard of probable cause that would warrant a person of ordinary caution, prudence and judgment to entertain a bona fide belief in the existence of the claim of fraud"; *Karen* v. *Loftus*, supra, 228 Conn. App. 204; we conclude that the court properly determined that the plaintiff had not satisfied his burden with respect to the second and third elements of fraud. The only direct evidence presented at the preliminary hearing concerning the defendant's reason for listing her interest in Starling as zero came from the defendant's testimony. When questioned on direct examination why she listed her business interest in Starling as zero on her financial affidavit, the defendant responded, "[a]t the time that [the plaintiff] and I were working on our financial affidavits, I wasn't sure what I should put as the number on that line. So, I sought information from my senior partners in the practice and asked them what I should put; if I were to leave, what would the value of my share in Starling be? And I was told that it would be nothing. There wasn't a buyout. You didn't get, you know, payment. The only payment you would receive upon leaving, whether it was retirement or just termination, would be whatever accounts receivable were outstanding at the time of your departure, and that there wasn't any cash buyout to be given at the time of your departure. And so, I brought

that information back to mediation and to [the plaintiff], and we agreed to put zero because we couldn't come up with any other number."

Thus, according to the defendant's testimony, she took information from the senior partners back to the mediation, and then she and the plaintiff "agreed" that, as to her share in Starling, she would "put zero because we couldn't come up with any other number." It is clear from the court's decision that it credited the defendant's testimony as to her state of mind and intentions at the time of the signing of her financial affidavit. "[A]s a general rule, appellate courts do not make credibility determinations. [I]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences from them." (Internal quotation marks omitted.) *Cimino* v. *Cimino*, supra, 174 Conn. App. 11; see also id. (relying on trial court's credibility determinations of party's testimony as to accuracy of disclosures on financial affidavit when affirming denial of motion to open dissolution judgment on ground of fraud).

The plaintiff argues that (1) the defendant's having signed and executed, prior to the dissolution judgment, an employment agreement with Starling, which provided that she had a share in Starling and (2) the testimony of the defendant at the preliminary hearing that she had inquired with the senior partners as to the value of her share and that she would be entitled to her accounts receivable in the event she departed Starling, establishes probable cause that the defendant knew at the time of the signing of her financial affidavit that the value of

her share was more than zero.[1] He further contends that the only purpose the defendant could have for listing her

[1] The plaintiff also argues that the court improperly failed to mention in its decision the defendant's accounts receivable and improperly failed to determine whether there was probable cause to believe that the defendant's nondisclosure of her accounts receivable amounted to fraud. He further contends that the court improperly failed to find that he established the existence of probable cause for fraud on the basis that the defendant failed to list on her financial affidavit that she had a share in Starling.

"It is well established that a party cannot obtain appellate review of a claim challenging a finding or determination that the court did not make. It is the responsibility of the appellant to provide an adequate record for review. . . . It is well established that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claims] would be entirely speculative. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . *or to ask the trial judge to rule on an overlooked matter*." (Emphasis in original; internal quotation marks omitted.) *Burr* v. *Grossman Chevrolet-Nissan, Inc.*, 224 Conn. App. 668, 678, 315 A.3d 414 (2024); *D2E Holdings, LLC* v. *Corp. for Urban Home Ownership of New Haven*, 212 Conn. App. 694, 712–13, 277 A.3d 261, cert. denied, 345 Conn. 904, 282 A.3d 981 (2022); see Practice Book § 61-10 (a).

First, the court did not address the issue of accounts receivable. Second, the court did not address the issue of whether the plaintiff established probable cause concerning fraud as to the defendant's having left blank the line on her financial affidavit for "Percent Owned" after having listed Starling under "Business Interest . . ." and representing that the net value of that business interest was zero. Rather, the court addressed the issue of the defendant having listed her interest in Starling as zero. In that regard, the court found that "the evidence supports the reasonable conclusion that the defendant did in fact make a statement that was not accurate in her May, 2018 financial affidavit. She stated that the total net value was zero with regards to her share in Starling . . . . She testified at the subsequent hearing that the share holds a face value of $1000 which represents the principal amount paid."

On the basis of the record before us, which contains no factual findings on the matters of accounts receivable or any failure on the part of the defendant to disclose the existence of her share in Starling, we

interest in Starling as zero was to cause the plaintiff to detrimentally rely on that statement.

These are speculative interpretations of the evidence that are insufficient to satisfy the plaintiff's burden of establishing the existence of fraud "beyond a mere suspicion"; *Brody* v. *Brody*, supra, 153 Conn. App. 636. Although the intent to defraud involves a state of mind and, thus, is usually proven by circumstantial evidence; *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 546, 391 A.2d 170 (1978); rational minds could not reasonably and logically draw the necessary inferences from this evidence. See *Aksomitas* v. *Aksomitas*, 205 Conn. 93, 100, 529 A.2d 1314 (1987) ("[p]roof by circumstantial evidence is sufficient where rational minds could reasonably and logically draw the necessary inferences"). Evidence that the defendant knew of the existence of her business interest in Starling and knew that she would be entitled to her accounts receivable *if* she left the practice is not sufficient, as the plaintiff's view of the evidence would suggest, to establish beyond a mere suspicion that the defendant knew at the time she signed her affidavit that listing her interest in Starling as zero was untrue. Nor was there evidence sufficient to establish that she had the intention of inducing detrimental reliance.

For the foregoing reasons, we conclude that the court's findings that the defendant did not know the challenged statements on her financial affidavit were untrue at the time she signed her affidavit and that she did not intend to induce reliance are supported by the record. In the exercise of plenary review; see *Karen* v. *Loftus*, supra, 228 Conn. App. 193; we determine that the court properly concluded that the plaintiff failed to establish probable cause to substantiate his fraud allegations beyond a mere suspicion. Accordingly, we conclude that the court did not abuse its discretion in denying the plaintiff's motion to open.

cannot conclude that the court abused its discretion in denying the motion to open.

### III

Lastly, the plaintiff claims that several of the court's factual findings were clearly erroneous. We conclude that any error was harmless.

"It is well established that [a]ppellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . [W]here . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's [fact-finding] process, a new hearing is required. . . . In a civil case, [t]he harmless error standard . . . is whether the improper ruling would likely affect the result." (Citations omitted; internal quotation marks omitted.) *Rader* v. *Valeri*, 223 Conn. App. 243, 260, 308 A.3d 66, cert. denied, 348 Conn. 959, 312 A.3d 37 (2024).

The plaintiff contends that the court erroneously found that the defendant testified that her share in Starling did not carry a value that could be quantified until discussions of a potential acquisition of Starling took place, despite her testimony that the senior partners told her that her share was worth "nothing." The plaintiff further contends that the court erroneously found that he read the defendant's employment agreement, which the defendant would not have signed but for the plaintiff's review, despite the defendant's testimony that she did not remember if she had relied upon the plaintiff's advice as an attorney when signing the employment agreement.[2]

[2] The plaintiff also argues that the court erroneously found that the defendant's employment agreement was referenced in the separation agreement and that the separation agreement permitted the defendant

We conclude that any error in these factual findings was harmless. Because there is unchallenged evidence supporting the court's determination of no probable cause, whether the plaintiff read and was aware of certain provisions in the defendant's employment agreement is not a finding that would have affected the ruling on this motion. In other words, it does not affect the court's conclusions that the defendant did not know at the time that her statements on her financial affidavit regarding the value of her share in Starling were inaccurate nor did she make such statements with the intention of inducing detrimental reliance. Likewise, whether, as the court stated, the defendant testified that the Starling share did not carry a value that could be quantified until discussions of a potential sale took place or whether, as the record reflects, the defendant testified that the senior partners informed her that, if she were to leave, the value of her share would be nothing, there exists other evidence in the record that the defendant did not intend to induce detrimental reliance or to make statements that she knew were untrue at the time of the signing of the financial affidavit. Significantly, the defendant credibly testified that she took the information about the value of her share to the mediation where both parties agreed that she should list the value of her share as zero. When taken as a whole with those facts supported by the evidence, the challenged factual findings are not likely to have affected the result.

The judgment is affirmed.

---

to retain her profit sharing plan with Starling. These findings are not clearly erroneous. The separation agreement provided that "the [defendant] shall retain . . . her Starling Physicians profit sharing plan (including monies she has yet to receive)." This provision of the separation agreement not only allows the defendant to keep her profit sharing plan with Starling, but the reference to Starling's profit sharing plan reasonably could be characterized as a reference to the defendant's employment agreement with Starling. In light of this provision in the separation agreement, we are not left with the definite and firm conviction that a mistake has been committed. See *Rader* v. *Valeri*, supra, 223 Conn. App. 260.